BRENT M. GIDDENS (State Bar No. 133652)
Email:  bgiddens@cdflaborlaw.com
DAWN M. IRIZARRY (State Bar No. 223303)
Email:  dirizarry@cdflaborlaw.com
CAROTHERS DISANTE & FREUDENBERGER LLP
707 Wilshire Boulevard, Suite 5150
Los Angeles, California  90017
Telephone:  (213) 612-6300
Facsimile:   (213) 612-6301

JS-6

Attorneys for Plaintiff
EDCO Group, Inc. d/b/a ABI Document
Support Services

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDCO GROUP, INC. d/b/a ABI DOCUMENT SUPPORT SERVICES,<br><br>Plaintiff,<br><br>vs.<br><br>TINA GOODRICH,<br><br>Defendant. | Case No. 5:12-cv-00348-VAP-DTB<br><br>[~~PROPOSED~~] ORDER RE STIPULATED FINAL JUDGMENT AND PERMANENT INJUNCTION |

On March 7, 2012, Defendant EDCO Group, Inc. d/b/a ABI Document Support Services (hereinafter "ABI") filed its Complaint for Damages and Injunctive Relief against Defendant Tina Goodrich (hereinafter "Goodrich").  The Complaint alleges Goodrich misappropriated trade secrets from ABI.  The Complaint also alleges:  (1) Goodrich violated 18 U.S.C. § 1030, 18 U.S.C. § 2701 and California Penal Code § 502 by accessing ABI's secure computer network without authorization; (2) Goodrich breached written Trade Secrets and Confidential Information Agreement with ABI; (3) Goodrich breached her duty of loyalty to ABI; and (4) Goodrich violated California Business and Professions Code § 1720 by engaging in unfair competition by improperly misappropriating ABI's property.

On April 10, 2012, the parties filed a Stipulation to Stay Case Pending Forensic Review of Goodrich's Computer Devices and Electronic Communications. ABI's forensic expert has had the opportunity to perform a preliminary review of Goodrich's computer devices and electronic communications.

On July 26, 2012, ABI and Goodrich entered into a Settlement Agreement to resolve this action.

Now, therefore, ABI and Goodrich have entered into the Settlement Agreement and consented to Judgment as follows:

It is hereby adjudged, ordered and decreed that:

1.  This Court has jurisdiction over ABI and Goodrich and the subject matter in this action and venue is proper in this Court.

2.  ABI provides record retrieval and summarization services to clients in the legal and insurance entities. ABI maintains offices throughout California, as well as in Springfield, Missouri; Garden City, New York; Tomball, Texas; Orland, Florida; and Miami, Florida.

3.  ABI's success in commercial market is highly dependent on its established relationship with its customers.

4.  ABI employs account executives to market services in record retrieval and summarization services.

5.  On or about March 1, 2004, ABI hired Goodrich as Account Executive Supervisor. Goodrich held several positions with ABI throughout her employment, including Client Relation Supervisor, Client Relation Specialist and Internal-Account Executive.

6.  In each of the positions Goodrich held with ABI, Goodrich enjoyed access to the Company's private and confidential customer lists.

7.  Over its many years of business development, ABI has compiled its list customers through various marketing efforts, customer referrals and other sources of

leads that have been gathered and forwarded to ABI account executives, including Defendant, to make sales on behalf of ABI.

8. ABI's customer list is detailed account information, compiled over many years at great expense and countless hours. The list includes some or all of the following information with regard to each customer: the name, address, and phone number of the customer; the contact person; customer pricing; the amount of money previously spent by the customer; and general information related to communications with the contact person. Other types of trade secrets known to Defendant include, but are not limited to, customer feedback, complaints and customer preferences. Plaintiffs have embodied their trade secrets and confidential customer information into a computerized list, accessible via ABI's "CRM System" program. The information that ABI has developed at great expense and labor gives ABI a competitive advantage in the industry. Access to it would allow anyone outside the Company to immediately solicit customers and compete with ABI - without first having to compile the data. It is ABI's policy to keep such data confidential, and employees sign agreements agreeing to do so.

9. Account Executives also maintain customer lead lists on their work computers for the benefit of developing sales for ABI. Such private and confidential customer lead lists are only accessible by each specific Account Executive by way of their own device login username and password.

10. Throughout her career at ABI, Defendant enjoyed access to the Company's confidential customer information through the CRM System program and otherwise. Such non-public information would be of extraordinary value to competing concerns, and ABI thus makes great effort to ensure and safeguard its secrecy.

11. ABI is aware of the importance of protecting the confidentiality of its trade secrets and other proprietary business information. As a result, the majority of

CAROTHERS DISANTE & FREUDENBERGER LLP

561459.1

1  ABI's trade secret information and data are stored on the Company's secure network
2  servers. ABI expends significant resources to maintain the security of this data and
3  the integrity of the information technology servers on which it is stored. Every ABI
4  employee must enter a unique user name and password to log on to his or her
5  computer. Only specifically designated users have access to the confidential
6  customer information contained in the CRM System program. Such access is limited
7  to account executives, supervisors, managers and executive level employees.

8        12.    Another means by which ABI protects its trade secrets and confidential
9  and proprietary business information is to enter into legally-binding confidentiality
10 agreements with its employees. Thus, at the outset of her employment with ABI, on
11 March 1, 2004, ABI and Defendant entered into the Trade Secrets and Confidential
12 Information Agreement and Non-Competition Agreement ("Agreement"). When she
13 signed the Agreement, Defendant agreed to certain restrictions on her conduct both
14 during and after her employment with the Company. In particular, the Agreement
15 provides as follows:

### Trade Secrets and Confidential Information & Non-Competition Agreement

**Confidential Information**. Employee hereby acknowledges that, in order to perform the Employee's duties as an employee of A.B.I./V.I.P., the Employee has received, and will, in the future, be given access to certain confidential, secret, and proprietary information in the form of records, data, specifications, formulas, technology, inventions, devices, products, methods, know-how, processes, financial data, customer and/or vendor information and practices, customer lists, marketing methods, costs information, corporate information, and trade secrets (hereinafter collectively "Confidential Information") developed and owned by A.B.I./V.I.P. concerning the business, products and/or services of A.B.I./V.I.P.

**Non-Disclosure**. Except as otherwise specifically provided herein, Employee will not, directly or indirectly, disclose or utilize: or cause or permit to be disclosed or utilized, to any person or to any entity whatsoever any Confidential Information acquired pursuant to Employee's relationship with A.B.I./V.I.P. (whether acquired prior to or subsequent to the execution of the Agreement) under this Agreement of otherwise.

1
2       **Permitted Disclosure**.  Employee may utilize the Confidential Information only to the extent reasonably necessary and required in the discharge of Employee's duties as an employee of A.B.I./V.I.P.

3
4       **Duplication**.  Employee shall not, without prior written consent of A.B.I./V.I.P., duplicate, or cause to permit to be duplicated, any material (including without limitation written, typed or printed material, or material embodiment in order forms, including embodiment on computer diskette(s) or tapes, or the transfer electronically of any information whatsoever contained within the company's computer files) included in the Confidential Information covered hereby.
5
6

7       **Restricted Use**.  Except as specifically provided herein, Employee will not, directly or indirectly, use or permit to be used, at any time or in any manner whatsoever, and Confidential Information acquired pursuant to Employee's relationship with A.B.I./V.I.P., under this Agreement, or otherwise.  Employee shall not at anytime or in any manner, except with the prior written consent of A.B.I./V.I.P., or as required by law, publish, disclose, or use for Employee's own benefit, or authorize anyone else to publish, disclose, or make use of, any Confidential Information unless and until such Confidential Information, shall cease to be secret as evidenced by general public knowledge.
8
9
10
11
12
        **Return of Information**.  Employee will immediately, upon the request of A.B.I./V.I.P., return A.B.I./V.I.P. all originals, copies, or other embodiments of any Confidential Information received under this Agreement or otherwise.  Employee will not retain, or cause or permit to be retained, any copies or other embodiment of the material so returned.
13
14
15
                                    *     *     *
16      **Remedies**.  The parties hereto stipulate that as between them the Confidential Information is important material and confidential trade secrets (except to the extent that such information either is or becomes published, or is or becomes a matter of public knowledge through no action of the Employee).  The parties herein further agree that the remedy at law for any breach of this Article would be inadequate and that, in addition to any other remedies A.B.I./V.I.P. shall be entitled to temporary and permanent injunctive relief without the necessity of providing actual damages.  Notwithstanding the preceding sentence, the parties herein further agree it is foreseeable that the breach by Employee of this Agreement may result in a substantial loss of profits or other damages to A.B.I./V.I.P. is intended to be exclusive or any other remedy or rights, and each and every right or reedy shall be cumulative and, in addition to any right or reedy given hereunder or now or hereafter excising at law or in equity of by statute.
17
18
19
20
21
22
23
24                                  *     *     *

25       13.    On or about January 26, 2012, ABI was notified by one of its employees
26  that Defendant had confidential and proprietary information on her own personal
27
28

                                         5

CAROTHERS DiSANTE & FREUDENBERGER LLP

561459.1

computing device. ABI was also notified that Defendant had received an offer letter from Compex Legal Services, Inc. to be its Manager of Florida Operations.

14. ABI's IT Department audited Defendant's work email account. The IT audit revealed multiple emails being sent from Defendant's work email to her personal email containing confidential and proprietary information of ABI.

15. The audit specifically revealed that Defendant had emailed confidential and proprietary information of ABI to her own personal email accounts on or before January 26, 2012, including information specific to ABI's Florida sales and operations. Specifically, Defendant had emailed a master lead list pulled from ABI's CRM System program, Shinkle's customer leads lists and other proprietary information related to ABI's Florida operations.

16. On January 26, 2012, Defendant was involuntarily terminated for diverting private and confidential information of ABI to her own personal account for the apparent use in her new employment with Compex Legal Services.

17. At the time of her termination, Defendant represented to ABI that she did not intend to work for Compex. However, Defendant immediately thereafter commenced employment with Compex, a direct competitor to ABI, as the Manager of Compex's Florida operations with the intention of taking customers from and competing directly with ABI. Prior to hiring Defendant, Compex did not have any business and/or a significant presence in Florida and did not maintain an office in Florida.

18. Following the initiation of this lawsuit, ABI retained a forensic computer expert to examine three of Goodrich's personal computer devices: an "old" Dell desktop; a Toshiba laptop; and a Motorola Xoom tablet. The forensic computer expert also examined a corporate Dell laptop used by Goodrich while employed by ABI.

CAROTHERS DiSANTE & FREUDENBERGER LLP

561459.1

19. A computer forensics' review of the aforementioned computer devices revealed as follows:

    a. Corporate Dell laptop -- A preliminary review of ABI's corporate Dell laptop demonstrated Goodrich accessed many files on January 26, 2012 -- the day she received the offer letter from Compex. In particular, Goodrich accessed over 85 files on the day she was terminated, including ABI's billing records, customer pricing information, customer lists, customer preferences, pricing proposals and proprietary forms used in ABI's business. That same day, Goodrich also searched the World Wide Web for information related to job resignations.

    b. Goodrich's Motorola Xoom -- A preliminary review of Goodrich's Motorola Xoom reveals the presence of at least 15 different ABI documents, including an Excel spreadsheet that contained lists of clients and potential clients in the states of Florida, Georgia, Texas, Missouri, Pennsylvania, Alabama, Wisconsin and Colorado. The Xoom also contained a history of correspondence between Goodrich and others about her leaving ABI. All of the aforementioned information was recovered by the forensic computer expert from the deleted state as someone had attempted to delete said information from Motorola Xoom.

    c. Goodrich's "old" Dell desktop -- During this lawsuit, Goodrich represented that the "old" Dell desktop had not worked for a long time. The forensic computer expert's review of the computer, however, revealed that there was an attempt to wipe all data from the computer on April 25, 2012. The "wiped data" included multiple ABI files. Moreover, one of multiple internet searches

CAROTHERS DISANTE & FREUDENBERGER LLP

561459.1

Goodrich performed on March 12, 2012, the day she was served with this lawsuit, was as follows: "I took information from my former employer but destroyed after leaving company and I am being sued."

20.   Goodrich misappropriated certain of ABI's proprietary and confidential information, including trade secrets, including without limitation information related to its customer's lists. Said misappropriated information was found on her personal computing devices.

21.   The information misappropriated by Goodrich provides Goodrich a competitive and commercial advantage that she would not have otherwise had absent the misappropriation.

22.   The Agreement dated March 1, 2004 is a valid and enforceable Agreement entered into between ABI and Goodrich. Goodrich did not sign such Agreement under duress. Goodrich breached the Agreement with ABI by misappropriating ABI's confidentiality and proprietary information, including trade secrets including but not limited to customer lists.

23.   On April 24, 2012, after the initiation of the instant lawsuit someone attempted to delete the entire contents of the partitions of the hard drive on Goodrich's personal "old" Dell desktop which included numerous ABI confidential documents including information related to ABI customers and contacts. Similarly, someone attempted to delete and wipe clean information related to ABI's confidential and proprietary information from Goodrich's Motorola Xoom.

24.   Goodrich represents, as of July 26, 2012, all ABI confidential information -- including hardware, software or other electric memory devices containing ABI confidential and proprietary information -- in her possession, custody or control (including any such hardware, software, etc. that was once in her custody) has been turned over to ABI. In particular, Goodrich has agreed to surrender her

CAROTHERS DiSANTE & FREUDENBERGER LLP

561459.1

"old" Dell desktop to ABI as it contains ABI confidential and proprietary information.

25. Judgment is hereby entered in favor of ABI on its claims of: (1) misappropriation of trade secrets and breach of contract.

26. ABI's remaining claims contained in its Complaint are hereby dismissed with prejudice.

27. Goodrich is enjoined from, directly or indirectly, using or permitting to be used, at any time or in any manner whatsoever, any confidential and proprietary information acquired pursuant to her employment relationship with ABI or otherwise. Goodrich shall not, at any time or in any matter, publish, disclose, or use for her own benefit, or authorize anyone else to publish, disclosure, or make use of any confidential and proprietary information of ABI's unless and until such confidential and proprietary information shall cease to be a secret as evidenced by general public knowledge. For purposes of this Order, confidential and proprietary information includes ABI's customer lists which contain detailed account information, compiled over many years at great expense and countless hours to ABI, which include customer name, address and phone number; contact person; customer pricing; amount previously spent on customer; and general information related to communications with the contact person.

28. For a period of one (1) year from the date of this Order, Goodrich is enjoined from, directly or indirectly, soliciting, enticing or inducing any client or customer from whom she performed business with on behalf of ABI, or with whom she became acquainted as a result of her employment with ABI, to become a client of any other person, firm or corporation with respect to products and/or services then sold by ABI, or to cease doing business with ABI. A list of said customers covered by this paragraph it is set forth in Exhibit A.

29. For a period of one (1) year from the date of this Order, Goodrich is enjoined from, directly or indirectly, soliciting, enticing or inducing any client or customer contained in the customer lists she misappropriated from ABI, to become a client of any other person, firm or corporation with respect to products and/or services then sold by ABI, or to cease doing business with ABI. A list of said customers covered by this paragraph it is set forth in Exhibit B.

30. Goodrich releases ABI, and forever discharges ABI, its directors, agents, employees, attorneys, trustees, representatives, parent companies, subsidiaries, affiliates, predecessors, successors, insurers, customers and assigns, or persons in privities with them or any of them, for all actions, causes of action, claims, counterclaims, cross-claims or third-party claims, which Goodrich ever had from the beginning of her employment with ABI to the effective date of the Settlement Agreement.

31. Goodrich represents that she holds a non-sales customer service postion with her current employer, Compex Legal Services, Inc., and the terms of this Stipulated Final Judgment and Permanent Injunction will not interefere with her ability to perform her job at Compex Legal Services, Inc.

32. This Court retains jurisdiction over this Stipulated Final Judgment and Permanent Injunction and any applications with regard to enforcement of this Stipulated Final Judgment and Permanent Injunctive shall be directed to this Court.

1  33. If Goodrich violates any terms of this Stipulated Final Judgment and Permanent Injunction and fails to cure such violation within thirty days after receipt of notice in violation, Goodrich shall be liable for and pay ABI's reasonable attorney's fees incurred in connection with the successful application to this Court for enforcement for this Stipulated Final Judgment and Permanent Injunction.

IT IS SO ORDERED.

DATE: __August 10, 2012    _____
                           Virginia A. Phillips
                           United States District Judge

CAROTHERS DiSANTE & FREUDENBERGER LLP

561459.1